John S. **Pangelinan**,
Plaintiff/Appellee,
v.
Juliana L. **Itaman**, Magdalena L. Mettao,
Emilia L. Saures, Maria Ilo, and
Roman W. Lairope,
Defendants/Appellants.
Appeal No. 95-013
Civil Action No. 92-1076
Opinion and Order
July 10, 1996

---

[13] *Id.* at 11.

[14] *Id.* at 12.

[15] *Id.* at 13.

Argued and Submitted May 30, 1996

Counsel for Appellants: Antonio M. Atalig, Saipan.

Counsel for Appellee: Randall T. Fennell, Saipan.

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ, Justice, and WISEMAN, Special Judge.

TAYLOR, Chief Justice:

¶1 ▮ This is the second time this matter has been before us. Appellants, Juliana Itaman and four other heirs to the estate of Vicente Uol, appeal a judgment against them in the Superior Court on remand from this Court. Our instructions on remand called for further fact-finding on whether a series of conveyances between appellee, John S. Pangelinan, and members of his family effectively foreclosed Mr. Pangelinan's efforts to enforce a contract he entered into with appellants regarding Lot No. E.A. 222 on Saipan. We have jurisdiction pursuant to 1 CMC §

3102(a). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶2 ▮ Appellants present three issues for our review:
I. Whether the Superior Court erred in its interpretation of a deed of gift dated April 23, 1984. Interpretation of a deed is a question of law, reviewable de novo. *Estate of Camacho*, 4 N.M.I. 22, 23 (1993).[1]

¶3 II. Whether the Superior Court erred in ruling that Mr. Pangelinan was not required to have owned Lot No. E.A. 222 at the time he entered into the land contract with appellants in order for the contract to be valid. Interpretation of the terms of a contract is a question of law, reviewable de novo. *Borja v. Rangamar*, 1 N.M.I. 347, 356-57 (1990).

¶4 III. Whether the Superior Court erred in ruling that the land contract between the parties is specifically enforceable. We review a trial court's exercise of equitable remedies for abuse of discretion. *Eurotex (Saipan), Inc. v. Muna*. 4 N.M.I. 280, 281-82 (1995).

## FACTUAL AND PROCEDURAL HISTORY

¶5 The factual background of this matter is set forth in our opinion in *Pangelinan v. Itaman*, 4 N.M.I. 114, 116 (1994) (" No. 93-012"), and the Superior Court's opinion on remand. *Pangelinan v. Itaman*, Civ. Action No. 92-1076 (N.M.I. Super. Ct. Apr. 4, 1995) (Decision and Order on Remand at 2-3). In brief, Mr. Pangelinan signed a land contract with appellants on April 20, 1986. Appellants were to convey to Mr. Pangelinan certain "short exchange rights" in 16,378 square meters of public land, and Mr. Pangelinan was to convey to appellants an equal portion of Lot No. E.A. 222, located in Papago, Saipan. The land contract required appellants to transfer their exchange rights immediately and specified that they were to "affirmatively act to obtain public land designated by [Mr. Pangelinan] . . . and in the alternative, hereby nominate and appoint [Mr. Pangelinan], or designee, as our representative to act in our stead for the purpose of obtaining public land as aforementioned . . . ." Land Contract (Apr. 20, 1986), Suppl. Excerpts R. of No. 93-

[1] In our opinion on the initial appeal of this case, we held that the validity of a contract is a mixed question of law and fact. *Pangelinan v. Itaman*, 4 N.M.I. 114. 117 (1994). On this appeal following remand, however, none of the Superior Court's factual findings are being challenged. We therefore review only the trial court's legal conclusions.

012 at ER-1.[2] Mr. Pangelinan, in exchange, agreed that he would "convey his rights, title and interest in and to the northeastern portion of Lot No. E.A. 222 . . . upon the satisfactory attainment of the desired public land as indicated in the above, to [appellants] . . . ." *Id.* at 2.

¶6 On remand, the trial court found that Mr. Pangelinan did not own Lot No. E.A. 222 at the time of this conveyance, because of the effect of a series of five transactions among Mr. Pangelinan and members of his family. The trial court analyzed each of these conveyances in turn.

¶7 The first of these transactions was a deed of gift dated April 23, 1984, in which Mr. Pangelinan,

> for and in consideration of natural love and affection I have unto my children by my wife, MERCED B. PANGELINAN, and for their support, maintenance and livelihood for and during their lifetime, do hereby give, remise, release and quitclaim unto them, subject to the estate reserved and the special limitation expressed hereunder, all of my right, title and interest in [Lot No. E.A. 222] . . . .
>
> [ . . . ]
>
> RESERVING, however, unto myself, for the life of their grandfather, DIONICIO M. BABAUTA, a life estate in the property herein conveyed.
>
> TO HAVE AND TO HOLD the same, so long as my mother, ROSALIA S. PANGELINAN, shall survive me -- that is, so long as she does not part from this world earlier than I, thereafter unto my said children, their heirs and assigns, forever, otherwise all herein conveyed shall revert back to me or my heirs or assigns.

Deed of Gift (Apr. 23, 1984), Suppl. Excerpts R. of No. 93-012 at ER-2. According to the Superior Court on remand, this document conveyed to Mr. Pangelinan's children an interest in fee simple determinable, which would revert back to Mr. Pangelinan in the event that Mr. Pangelinan's mother did not survive him. *Pangelinan, supra,* Decision and Order on Remand at 6. The court found that the deed also reserved for Mr. Pangelinan a life estate *pur autre vie* ("for the life of another"), measured by the life of Mr. Pangelinan's father-in-law. *Id.*

¶8 Second, Mr. Pangelinan executed a second deed of gift on April 30, 1984, through which he gave to his wife, Merced B. Pangelinan, "my future interest (right of reverter) in and to [Lot No. E.A. 222]." Deed of Gift (Apr. 30, 1984), Excerpts R. at __ .[3] The court found that this deed conveyed Mr. Pangelinan's possibility of reverter, by which he would regain title to the land in the event that his mother did not survive him, to his wife. *Pangelinan, supra,* Decision and Order on Remand at 7.

¶9 Third, on May 4, 1984, Mr. Pangelinan executed a third deed of gift which quitclaimed Lot No. E.A. 222 to his father-in-law, Dionicio M. Babauta. Deed of Gift (May 4, 1984), Excerpts R. at ___. The Superior Court found that this deed conveyed the only interest in the land Mr. Pangelinan had left: a life estate, measured by the life of the father-in-law. *Pangelinan, supra,* Decision and Order on Remand at 7-8.

¶10 Fourth, on July 29, 1984, Mr. Pangelinan's father-in-law executed a deed of gift, purporting to convey Lot No. E.A. 222 to Mr. Pangelinan's wife. Deed of Gift (July 29, 1984), Excerpts R. at _____. The Superior Court found that this deed likewise conveyed only the interest the father-in-law himself owned: a life estate, measured by his own life. *Pangelinan, supra* Decision and Order on Remand at 8. The court also found that on October 10, 1990, Mr. Pangelinan's mother died. *Id.* at 3. According to the court, this death divested Mr. Pangelinan's children of their remainder interest in the property and triggered the right of reverter which Mr. Pangelinan had conveyed to his wife on April 30. 1984. *Id.* at 11. Thus, Mrs. Pangelinan owned both a life estate and a remainder interest in Lot No. E.A. 222, which merged into fee simple ownership of the property. *Id.*

¶11 Fifth, on August 29, 1992, Mr. Pangelinan's wife quitclaimed Lot No. E.A. 222 back to Mr. Pangelinan. Quitclaim Deed (Aug. 29, 1992), Suppl. Excerpts R. of No. 93-012, at ER-3. The court found that by this conveyance Mr. Pangelinan regained fee simple ownership of the property. *Pangelinan, supra,* Decision and Order on Remand at 11. The court's opinion noted, and apparently credited, Mrs. Pangelinan's testimony that she intended to transfer the property back to her husband "once he was required to perform under the land contract." *Id.* at 11 n.5.

¶12 From the history of these transactions, the trial court concluded that Mr. Pangelinan did not own Lot No. E.A. 222 in fee simple at the time he entered into the land contract with appellants, but that the contract did not require him to have such title until the time specified for performance, which, in the court's view, had not yet arrived. *Id.* at 11. The court held that the land contract was therefore subject to specific performance. *Id.* at 12.

---

[2] Appellants counsel failed to include this and other pertinent documents in the excerpts of record in this case. Therefore. we have been obliged to rely on the record of the previous appeal (No. 93-012) in our review here.

[3] Appellants' counsel failed to paginate, tab or index the Excerpts of Record, as is required by Com. R. App. P. 30(e).

Appellants timely appealed.

## ANALYSIS

### I. Interpretation of the April 23, 1984 Deed.

¶13 Appellants argue that the deed of gift Mr. Pangelinan executed in favor of his children on April 23, 1984, is vague and inconsistent in that it contains "both life estate reservation and special reservations." Appellants' Br. at 7. Appellants argue that "[t]he vague provision becomes apparent in that even if the grantor's mother dies, the grantor's right of reverter cannot be enforced because the grantor's children own a fee simple interest subject to a life estate. *Id.* at 8. This argument has no merit.

¶14 ■ The Superior Court found that the April 23, 1984 deed of gift placed both a limitation and a condition on the fee simple grant of Lot No. E.A. 222 to Mr. Pangelinan's children. First, it reserved a life estate for Mr. Pangelinan, measured by the life of his father-in-law Dionicio Babauta. Second, it made the grant contingent upon whether Mr. Pangelinan's mother survived him. If she did, the children would receive the remainder interest following Mr. Pangelinan's life estate. If she did not, the children's interest would be extinguished. We see no fatal inconsistency or vagueness in these two provisions.

¶15 ■ Our original opinion on appeal suggested that the deed of gift was ambiguous in that it could be read to reserve a life estate measured simultaneously by two different lives, those of Mr. Pangelinan's mother and his father-in-law. *Pangelinan, supra,* 4 N.M.I. 114, 118. This ambiguity arises from the use of the phrase "so long as" in the clause establishing Mr. Pangelinan's asserted right of reverter. Because "so long as" may mean "for the time that" as well as "on the condition that," we must examine the full clause to determine what was intended. The full clause reads:

> TO HAVE AND TO HOLD the same, *so long as* my mother, ROSALIA S. PANGELINAN, shall survive me -- that is, *so long as* she does not part from this world earlier than I, thereafter unto my said children, their heirs and assigns, forever, otherwise all herein conveyed shall revert back to me or my heirs or assigns.

Suppl. Excerpts R. of No. 93-012 at ER-2 (emphasis added.) The phrase "so long as" is actually used twice here. While the first "so long as" can plausibly be read in both senses of the phrase, the second "so long as" clarifies that it is meant in the sense of "on the condition that." The phrase "so long as she does not depart from this world earlier than I" cannot mean anything other than "on the condition that she does not survive me." Construed in this manner, the deed of gift is not so vague that it cannot be enforced.[4]

¶16 Appellants' further argument -- that the children received a fee simple interest in the property and that only the children could validly reconvey it to Mr. Pangelinan -- is premised on the alleged fatal ambiguity of the April 23, 1984, deed of gift, and thus fails. Appellants do not challenge the Superior Court's interpretation of the subsequent transactions among Mr. Pangelinan, his wife and his father-in-law. Nor do they appeal the court's finding that Mr. Pangelinan's mother-in-law did in fact die on October 10, 1990, or allege any error in the conclusion the court drew as to the legal effect of the death. Therefore, we need not consider these matters. The Superior Court's interpretation of the chain of ownership of the property is therefore affirmed.

### II. Mr. Pangelinan's Non-Ownership of Lot No. E.A. 222 When the Contract was Signed.

¶17 Appellants argue that Mr. Pangelinan breached the land contract, because he did not have clear title to the lot at the time he signed the contract and thereby breached an "implied warranty" of clear title. The argument is unpersuasive.

¶18 ■ First, both the Superior Court's decision on remand, *Pangelinan, supra,* Decision and Order on Remand at 9-10, and Mr. Pangelinan's brief, Appellee's Br. at 3, accurately cite the rule that where a land contract contemplates the subsequent conveyance of land, the vendor need not have clear title until the time at which performance is required. *Neves v. Wright,* 63 8 P.2d 1195, 1197 (Utah 1981); *Thompson v. Skowhegan Sav. Bank,* 433 A.2d 434, 437 (Me. 1981); 8A George W. Thompson, COMMENTARIES ON THE LAW OF REAL PROPERTY § 4487 (John S. Grimes rep. ed. 1963) ("[i]t is the condition of title at the time fixed for performance which determines the rights of the parties"). Even the authority cited by appellants supports this view. *See McManus v. Patch,* 129 P. 613, 614 (Cal. Ct. App. 1912) ("[w]here there is no

---

[4] Appellants also assert that the deed violates the rule against perpetuities. Appellants' Br. at 9. This claim is frivolous. The rule against perpetuities bars legal interests which may vest, if at all, more than twenty-one years beyond a "life in being." *See* RESTATEMENT (SECOND) OF PROPERTY § 1 (1983). Here, under *any* interpretation of the deed of gift there are only three possible measuring "lives in being": Mr. Pangelinan's, Dionicio Babauta's, and Rosalia S. Pangelinan's. No matter how the deed is interpreted, the interest conveyed to Mr. Pangelinan's children must vest, if at all, at the death of one of these three lives (of course, under the correct interpretation of the deed, the interest would vest upon the death of Dionicio Babauta). Therefore, even assuming arguendo the validity of appellants' contention that the deed is ambiguous, there is no possible way it could violate the rule against perpetuities.

title, or defective title in the grantor *at the time fixed for the conveyance*, the purchaser may treat the contract as rescinded") (emphasis added).

¶19 Appellants do not dispute this rule, but instead assert that the land contract here was not executory. This contention is clearly false. The Superior Court correctly pointed to the language of the contract which called for Mr. Pangelinan to deliver the specified portion of Lot No. E.A. 222 "upon satisfactory attainment" of the public land appellants were entitled to by virtue of their "short exchange rights." *Pangelinan, supra*, Decision and Order on Remand at 11. This language is obviously executory. Therefore, the common-law rule governing executory land contracts is directly applicable.

¶20 Finally, the authority cited in appellants' brief for the proposition that Mr. Pangelinan breached an "implied warranty" in the land contract is off point. *Weiser v. Ekre*, 271 N.W. 147 (N.D. 1937) actually stands for the proposition that a vendee who contracts with a vendor for the purchase of land should not be compelled to accept a deed from a third party. The case does contain dictum that the contract under review did contain "an implied warranty, on the part of the vendors, that at the time the contract was made they were the owners of the land described," but the case states no holding on that issue. *See id.*, 271 N. W. at 151. Scrutinizing the land contract in this case, we do not find any warranty, express or implied, that Mr. Pangelinan was the fee simple owner of Lot No. E.A. 222 at the time of execution. Rather, the contract represented that Mr. Pangelinan would "convey his rights, title and interest in and to the northeast portion of Lot N. E.A. 222 . . . upon the satisfactory attainment of the desired public land . . . ." Suppl. Excerpts R. of No. 93 - 012 at ER-2. To imply a covenant of warranty at the time of execution here would fly in the face of the common-law rule that marketable title is determined at the time of performance. Further, from a policy perspective, such a rule would enable remorseful buyers to rescind purchases at the eleventh hour on the technical ground that the seller, at some time in the past, lacked clear title to the property. This is exactly the situation the common law rule is designed to prevent.[5] The Superior Court did not err in concluding that the land contract was not breached.

**III. Specific Performance.**

¶21 While appellants purport to challenge the award of specific performance as a separate issue on appeal, Appellants' Br. at 1, they make no argument whatsoever as to why the award of specific performance was incorrect, other than the arguments already asserted that Mr. Pangelinan was unable to perform and that the land contract was breached. Since we affirm as to these issues, there remains no basis for considering the propriety of awarding specific performance.

**ORDER TO SHOW CAUSE**

¶22 In our review of this matter, we are concerned that appellants' counsel has not met the standards of appellate advocacy upon which this Court must insist. As noted above, the excerpts of record do not comply with Rule 30(e) of the Commonwealth Rules of Appellate Procedure. Furthermore, critical documents were not included in the record of this appeal, forcing the Court to search the files of the prior appeal in order to review the issues raised. Of most serious concern, we are of the view that appellants' arguments -- that the series of transactions between Mr. Pangelinan and his family are vague and inconsistent and that the Sections violate the rule against perpetuities -- are frivolous, in that no reasonable person could conclude that these arguments were likely to succeed on the merits. *See Tenorio v. Superior Ct.*, 1 N.M.I. 112, 123 (1990). We therefore **ORDER** appellants' counsel to show cause within thirty days why he[6] should not be taxed double costs and attorneys' fees, pursuant to Com. R. App. P.38(a). Appellee shall, within fifteen days of the filing of this Opinion and Order, submit a statement of fees and costs expended on this appeal, and appellants' counsel may make any objection to the amount of fees claimed in his response to this order to show cause. Upon receipt of these submissions, the Court shall issue a final ruling on this sanction.

**CONCLUSION**

¶23 For the foregoing reasons, the Superior Court's decision and order on remand is **AFFIRMED**. Appellee shall submit within fifteen days of this date a statement of all fees and costs expended on this appeal. Appellants' counsel shall respond within thirty days of this date to the Court's order to show cause.

---

[5] The Superior Court adopted the safeguard described in *Neves, supra* 638 P.2d at 1198, that courts should review the circumstances of a challenged executory contract carefully, in order to "avoid unfairness, sharp practice, and outright dishonesty." *Id.*; *see Pangelinan, supra*, Decision and Order on Remand at 10. Appellants did not appeal the court's findings in this regard, so there is no basis to review them here.

[6] We wish to make clear that it is appellants' *counsel*, not appellants themselves, who shall be liable for any sanction imposed.